IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DELTA STONE PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> EUROSTONE MACHINE USA, INC, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT <br><br><br> Case No. 2:17-CV-737 TS <br><br> District Judge Ted Stewart |

This matter is before the Court on Defendant's Motion to Dismiss or for Summary Judgment. Defendant seeks dismissal of Plaintiff's claims. Alternatively, Defendant seeks to have any claims not dismissed on the merits sent to arbitration. For the reasons to be discussed, the Court denies the Motion and stays the case to allow the claims to be submitted to arbitration in accordance with the arbitration clause of the Sales Contract.

I.  BACKGROUND

Delta Stone Products, Inc. ("Delta Stone"), a Utah Company, entered into an agreement to supply stone for a time-sensitive project. In order to perform on the agreement, Delta Stone signed a purchase contract (the "Sales Contract") with EuroStone Machine USA, Inc., ("EuroStone"), a South Carolina company, for the purchase and transport of a stone cutting machine. "As part of that purchase contract, EuroStone acted as Delta Stone's representative and . . . was charged with assisting in the selection [of] the Stone Cutting Machine from among

EuroStone's vendors, arranging the import and transport of the Stone Cutting Machine, and purchasing insurance" to cover the import and transport of the machine.[1]

Delta Stone allegedly notified EuroStone of the time-sensitive nature of the project and the potential loss if the machine was damaged or delivered late. However, when the stone cutting machine arrived in Heber City, Utah, it was significantly damaged and the need for repairs delayed Delta Stone's work on its project. The delay allegedly resulted in lost profits and other damages.

Delta Stone's Complaint alleges three claims of relief, including Breach of Contract, Breach of Fiduciary Duties, and Negligence. Delta Stone claims that EuroStone breached its obligations by:

> (i) failing to put any of its vendors, agents, or freight carriers on notice of the time- and quality-sensitive nature of the delivery; and (ii) by failing to purchase adequate insurance for the transport of the Stone Cutting Machine that would cover consequential damages should the Stone Cutting Machine arrive late or damaged and allow Delta Stone to sue the insurer in Utah.[2]

However, before making any findings on the merits of Delta Stone's claims, the Court must first consider whether the claims are covered by the arbitration clause in the Sales Contract.

## II.  STANDARD OF REVIEW

Under the Federal Arbitration Act:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.[3]

---

[1] Docket No. 2 ¶ 1.
[2] Docket No. 6, at 2.
[3] 9 U.S.C. § 2.

In support of this statute, "[t]he Supreme Court has long recognized and enforced a liberal federal policy favoring arbitration agreements. Therefore, all doubts must be resolved in favor of arbitration."[4] "However, whether a party agreed to arbitration is a contract issue, meaning arbitration clauses are only valid if the parties intended to arbitrate."[5] Therefore, the Court must decide any issues that may call "into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce."[6] To do this, the Court applies state-law principles.[7] And while there is a choice-of-law provision at issue in this dispute, Utah and South Carolina law are substantively the same on the issues before the Court, so the Court will refrain from making a finding on the applicability of the choice-of-law provision in the Sales Contract at this time.

III. DISCUSSION

"In interpreting a contract, the intentions of the parties are controlling."[8] "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a

---

[4] *Ragab v. Howard*, 841 F.3d 1134, 1137 (10th Cir. 2016) (internal citations omitted). Both Utah and South Carolina also favor arbitration. *See Cent. Fla. Inv., Inc. v. Parkwest Assocs.*, 40 P.3d 599, 606 (Utah 2002) ("[I]f there is any question as to whether the parties agreed to resolve their disputes through arbitration or litigation . . . we interpret the agreement keeping in mind our policy of encouraging arbitration."); *Landers v. Fed. Deposit Ins. Corp.*, 739 S.E.2d 209, 213 (S.C. 2013) ("It is the policy of this state and federal law to favor arbitration . . . .").
[5] *Ragab*, 841 F.3d at 1137.
[6] *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 297 (2010).
[7] *Ragab*, 841 F.3d at 1137.
[8] *Parkwest*, 40 P.3d at 605; *McGill v. Moore*, 672 S.E.2d 571, 574 (S.C. 2009) ("The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language.").

matter of law."[9] However, if the language is ambiguous, "extrinsic evidence must be looked to in order to determine the intentions of the parties."[10] In making these determinations, "[a] contract is read as a whole document so that one may not create an ambiguity by pointing out a single sentence or clause."[11]

In regard to the interpretation of arbitration clauses, "[a] clause which provides for arbitration of all disputes 'arising out of or relating to' the contract is construed broadly. Courts have held that such broad clauses are capable of an expansive reach,"[12] and apply to "disputes in which a significant relationship exists between the asserted claims and the contract in which the arbitration clause is contained."[13] "If the scope of an arbitration clause is debatable or reasonably in doubt, the clause should be construed in favor of arbitration unless it can be said that it is not susceptible to an interpretation that covers the asserted dispute."[14]

---

[9] *Parkwest*, 40 P.3d at 605; *McGill*, 672 S.E.2d at 574 ("Where the contract's language is clear and unambiguous, the language alone determines the contract's force and effect.").

[10] *Parkwest*, 40 P.3d at 605; *S.C. Dept. of Nat. Res. v. Town of Mclellanville*, 550 S.E.2d 299, 302 (S.C. 2001) ("A contract is ambiguous when the terms of the contract are reasonably susceptible of more than one interpretation.").

[11] *McGill*, 672 S.E.2d at 574; *Parkwest*, 40 P.3d at 605 ("In evaluating whether the plain language is ambiguous, we attempt to harmonize all of the contract's provisions and all of its terms.").

[12] *Landers*, 739 S.E.2d at 213–14 (internal quotation marks omitted).

[13] *Id.* at 214; In *Lindon City v. Engineers Const. Co*, the arbitration provision stated, "All claims, disputes and other matters in question arising out of, or relating to, the CONTRACT DOCUMENTS or the breach thereof . . . shall be decided by arbitration." 636 P.2d 1070, 1071 (Utah 1981). The court held "there is nothing in the contract here that is unclear, ambiguous or vague, and even if there were, the parties have agreed to arbitrate such things first." *Id.* at 1073.

[14] *Lindon City*, 636 P.2d at 1073 (internal citations omitted); *Landers*, 739 S.E.2d at 213 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. The heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration. Such a presumption is strengthened when an arbitration clause is broadly written.") (internal citations omitted).

The arbitration clause at issue in the Sales Contract states:

> A disputes [sic] related to this Sales Contract shall be submitted to binding arbitration with the American Arbitration Association. . . . The only matter which may be the subject of a court action is the enforcement of this arbitration provision; provided, however, either party shall have the right to obtain provisional remedies such as injunctive relief or the appointment of a receiver.[15]

First, this arbitration clause must be construed broadly and is expansive in scope as its language covers "disputes related to" the Sales Contract. From this language alone, the intent of the parties to arbitrate is unambiguous and clear.

Second, a significant relationship exists between the claims brought by Delta Stone and the Sales Contract. The Sales Contract forms the basis of the relationship between the two parties and sets out the standard terms, payment arrangements, and duties to which Delta Stone and EuroStone agreed. The claims being brought by Delta Stone arose out of that agreement in as much as they are based on actions taken in furtherance of the Sales Contract. Delta Stone admits as much in its Complaint when it states in the first paragraph that:

> As part of that purchase contract, EuroStone acted as Delta Stone's representative and . . . was charged with assisting in the selection [of] the Stone Cutting Machine from among EuroStone's vendors, arranging the import and transport of the Stone Cutting Machine, and purchasing insurance for the import and transport of the Stone Cutting Machine.[16]

EuroStone's alleged failure to warn of consequential damages and purchase sufficient insurance were duties EuroStone was charged with "[a]s part of the purchase contract," and relate directly back to the original terms of the agreement. The arbitration clause, therefore, is susceptible to an interpretation that covers this dispute and must be construed in favor of arbitration.

---

[15] Docket No. 5-1, at 3.
[16] Docket No. 2 ¶ 1.

Delta Stone argues that its claims do not fall within the scope of the arbitration clause and that "the Sales Contract relied on by Defendant does not govern the claims at issue. More specifically, the Sales Contract expressly excludes the shipping and related insurance obligations assumed by Defendant."[17] According to Delta Stone, the claims at issue deal with EuroStone's "value-added service" of assisting with shipping and insurance rather than with the Sales Contract.[18]

Delta Stone's arguments are directly contradicted by its Complaint. In the Complaint, as provided above, Delta Stone specifically states that these "value-added services" were "part of that purchase contract."[19] Thus, it cannot now argue that the Sales Contract does not govern this dispute. Even without the statement in Delta Stone's Complaint, the argument that shipping and insurance were part of a separate agreement fails because, "when two agreements are at issue, one with an arbitration clause and one without, the fact that one agreement references the other supports arbitrating claims arising from either agreement."[20]

Finally, other than providing several bills and a statement by EuroStone's President about "value-added services," Delta Stone fails to provide any evidence of a separate agreement that supersedes the Sales Contract or waives arbitration, and "any doubt" that may have been cast by

---

[17] Docket No. 6, at 3.

[18] *Id.* To support this, Delta Stone references a quote from EuroStone's President in which he stated, "As a value added service to EuroStone's customers, many of which have little or no importing experience, EuroStone will assist with overseas transportation arrangements for machinery and for its customs-entry into the United States." Docket No. 6-1 ¶ 5.

[19] Docket No. 2, ¶ 1.

[20] *Nat'l Amers. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1291 (10th Cir. 2004); *see also ARW Exp. Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) (holding that "the agreement to arbitrate need not be in a single document or writing" when five joint venture agreements contained a broad arbitration clause and the sixth related agreement did not).

Delta Stone "must be resolved in favor of arbitration."[21] Therefore, the Court finds that the scope of the arbitration clause covers this dispute as it is susceptible to an interpretation that covers the alleged failures by EuroStone to put the subcontractors on notice of the potential for consequential damages and to purchase sufficient insurance on the shipping.

## IV.    CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Dismiss or for Summary Judgment (Docket No. 5) is DENIED. The case will be stayed until such arbitration has been conducted in accordance with the terms of the Sales Contract.[22] The Clerk of Court is directed to administratively close this case.

DATED this 8th day of November, 2017.

BY THE COURT:

Judge Stewart
United States District Judge

---

[21] *Landers*, 739 S.E.2d at 216.
[22] 9 U.S.C. § 3.